UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JODI HUGHES-RODRIGUEZ, et al.[1] | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:20-cv-00396-HAB-SLC |
| | ) |
| OFFICER KYLE HARTMAN and | ) |
| INTERNAL AFFAIRS OF THE FORT | ) |
| WAYNE POLICE DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Cooperstown catcher Gary Carter planned to be the best paperboy ever: "I used my Sting-Ray bike and got the papers there after school. People know I porched everything. No roofs, no lawns. I stopped the bike and nailed it. And if I ever missed, I would go pick it up and do it right." M.R. tried to live by the Gary Carter school of paper delivery. After he errantly threw a paper, he ran through the yard, retrieved it, and put it on the porch. What took place next led to this action by the remaining Plaintiff asserting that Defendant Fort Wayne Police Officer Kyle Hartman (Officer Hartman) violated her rights during a traffic stop. Plaintiff also sued Fort Wayne Police's Internal Affairs Department (the Department) asserting that it failed to properly investigate her complaints arising from the stop.

Before the Court is the Defendants' Motion for Summary Judgment (ECF No. 33). Pursuant to N. D. Ind. L. R. 56-1(f), *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992) and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), Defendants filed the required notices informing Hughes-

---

[1] Hughes-Rodriguez is proceeding *pro se* and filed suit on behalf of herself and her minor son. After being advised that she cannot represent her son in these proceedings, Hughes-Rodriguez failed to obtain counsel to represent his interests. The Court dismissed M.R's claims from the lawsuit without prejudice. Only Hughes-Rodriguez remains as a plaintiff in this suit.

Rodriguez of the consequences of failing to respond to the motion for summary judgment. (ECF No. 35). Hughes-Rodriguez did not respond, making the motion ripe for consideration. Because the Court finds no constitutional violations by Officer Hartman relating to the stop and, in turn, no genuine issues of material fact that he violated the Plaintiff's rights, the Defendants' Motion is GRANTED. Additionally, the Department is not a suable entity in an action under § 1983 making summary judgment appropriate.

## FACTUAL BACKGROUND

M.R. and Hughes-Rodriquez are newspaper carriers for the Fort Wayne News Sentinel. (Compl., ECF No. 3, ¶ 7). In the early morning hours of March 3, 2020, the two were delivering newspapers in the area of 5008 Nevada Avenue. (*Id.* ¶ 8). Officer Hartman was on patrol and responded to a suspicious person call at 5008 Nevada Avenue. (Kyle Hartman Aff., ECF No. 33-1, ¶ 3). The caller stated that a male wearing a grey or white hoodie was on the caller's back porch, fled from the residence and got into the passenger side of a silver Ford Escape. (*Id.*). A few minutes later, Officer Hartman found a car matching the description nearby and followed it. A second officer, Officer Woods, had reported to the caller's address on Nevada Avenue. Officer Hartman confirmed with Officer Woods that the vehicle the male had entered was a Ford Escape. Officer Hartman turned onto Camelot Avenue and observed a male matching the suspect's description exit the passenger side of a Ford Escape, deliver a newspaper, and return to the car. (*Id.* ¶ 9). Officer Hartman activated his lights and initiated a stop of the Ford Escape. (*Id.* ¶ 10).

The driver, later identified as Hughes-Rodriguez, began to exit the vehicle but was instructed to remain inside by Officer Hartman. (Hartman Aff. ¶ 10). He then approached the vehicle and spoke to Hughes-Rodriguez for around a minute. During that interaction, Hughes-Rodriguez identified the passenger as her son, M.R. Officer Hartman advised Hughes-Rodriguez

that M.R. was wearing clothing that matched the description of the clothing worn by the suspicious male. (*Id.* ¶¶s 11-12). Officer Hartman continued to question Hughes-Rodriguez and she acknowledged delivering a newspaper to one residence on Nevada Avenue. At first, Hughes-Rodriguez denied that M.R. left the vehicle on Nevada Avenue. After further inquiry, she stated that she saw a woman in the window of the Nevada Avenue residence and explained that M.R. missed getting the paper on the porch, got out of the car to put the paper on the porch, and ran back to the car through the yard. She could not, however, provide the address of the residence on Nevada Avenue where this occurred.

Officer Hartman spoke with Officer Woods who told him that the rear door of the residence was broken and entry had been attempted. After learning this, Officer Hartman asked Hughes-Rodriguez if M.R. had been in the back yard. She responded that she "would never let her son do something like that." Officer Hartman advised her that footprints were found and Hughes-Rodriguez told him they would not match M.R.'s shoes. Although there were no video cameras at the residence, Officer Hartman asked Hughes-Rodriguez "if" Ring doorbell cameras would show M.R. at the back door. She responded no.

Officer Hartman asked M.R. to step out of the vehicle and conducted a pat-down of his outer clothing. M.R.'s height and clothing description matched the suspect's description. Officer Hartman photographed M.R.'s clothing, face, hands, and shoes before allowing him to return to the vehicle. At no time was Hughes-Rodriguez' person or vehicle searched.

A license plate records search uncovered that the vehicle plate did not match the Ford Escape and the car was not registered. Officer Hartman then issued two citations, one for Operating a Motor Vehicle with a Fictitious Registration Number and the other for Failure to Register a Vehicle. Hughes-Rodriguez and M.R. were then free to leave. All Officer Hartman's interactions

with Hughes-Rodriguez and M.R. are captured on the in-car camera in his vehicle and that video has been provided to the Court. (ECF No. 32).[2]

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light

---

[2] The Court has viewed the in-car camera video in its entirety. This video confirms the events in Officer Hartman's affidavit.

most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

That a motion for summary judgment is unopposed doesn't change the summary judgment standard, and the court still conducts "more than just a cursory review of the filings" and scrutinizes the movant's factual submissions to "determine that the motion is sound and within the parameters of the law." *Leal v. TSA Stores, Inc.*, No. 2:13 CV 318, 2014 WL 7272751, at *1 (N.D. Ind. Dec. 17, 2014). An unopposed motion does, however, "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, facts alleged in the motion are considered admitted so long as support for them exists in the record. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). Mindful of these standards, the Court turns now to the substance of the case.

B. *Analysis*

In her Complaint, Hughes-Rodriguez asserts Fourth and Fourteenth Amendment claims against Officer Hartman in both his individual and official capacities. She alleges that Officer Hartman violated her rights as guaranteed under the Fourth Amendment when her vehicle was "unreasonably seized and searched without probable cause, warrant, and/or consent." (ECF No. 3 ¶ 20). She also asserts that Officer Hartman infringed on her right to due process of law under the Fourteenth Amendment by fabricating facts in his police report to justify the stop. (*Id.* ¶ 21). Finally, Hughes-Rodriguez contends that Fort Wayne Police Department's Internal Affairs refused to investigate her complaints.

5

1. *Official Capacity Claims*

The Court can quickly dispense of Hughes-Rodriguez' official capacity claim against Officer Hartman. Any claims against this officer that are brought in his official capacity are the functional equivalent of a direct suit against the municipality — the City of Fort Wayne. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). These claims are therefore constrained by the parameters of *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694. Rather, to obtain relief against a municipality, a plaintiff must allege that the deprivations of her rights stemmed from an official policy, custom, or practice of the municipality. *Id.* at 691; *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). Hughes-Rodriguez has not even come close to satisfying this standard. *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). She has provided no evidence that there was a policy or custom within the City to conduct investigatory stops without reasonable suspicion and, as demonstrated below, there was reasonable suspicion to justify the stop of Hughes-Rodriguez' vehicle. For this reason, the City cannot be held liable.

2. *Fourth Amendment*

Next the Court turns to whether Officer Hartman was justified in conducting a stop of the vehicle in which Hughes-Rodriguez and M.R. were traveling. A brief investigatory stop is permitted under the Constitution when it is based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 21 (1968); *United States v. Riley,* 493 F.3d 803, 808 (7th Cir. 2007). Officers,

therefore, may conduct an investigatory stop of a person when they have a reasonable, articulable suspicion that criminal activity is afoot. *Riley,* 493 F.3d at 808. Reasonable suspicion amounts to something less than probable cause but more than a hunch. *Id.* When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect. *Id.*

That Officer Hartman had reasonable suspicion to conduct an investigatory stop is not even a close question. In responding to a suspicious person complaint, Officer Hartman located a Ford Escape which matched the make and model reported by the complainant near the area where the report was made. Officer Hartman then observed M.R., whose clothing and description matched the person reported by the complainant, exit the Ford Escape from the passenger side, deliver a paper and return to the car. At this point, he conducted an investigatory stop to inquire further. Once he did, Hughes-Rodriguez admitted being near the Nevada Avenue home, admitted that her son left the vehicle to put the paper on the porch and ran through the yard to return to the vehicle. All of this information taken together justified not only the initial stop, but the brief detention that unfolded afterward. Officer Hartman did not violate the Fourth Amendment when he conducted the investigatory stop and briefly detained Hughes-Rodriguez and her son. Defendants are entitled to summary judgment.

### 3. *Fourteenth Amendment*

As for the alleged violation of Hughes-Rodriguez' Fourteenth Amendment rights, the Defendants are again entitled to summary judgment. The Supreme Court has stated: "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of

'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citations omitted); *Serino v. Hensley*, 735 F.3d 588, 593–94 (7th Cir. 2013) (constitutional claims relating to pretrial deprivations of liberty must be analyzed under the appropriate constitutional amendment, not due process generally). Here, the Fourth Amendment provides an explicit source of protection for the investigatory stop of Hughes-Rodriguez' vehicle and the brief detention that occurred. Thus, no Fourteenth Amendment "substantive due process" right is implicated by the stop.[3]

### 4. Claim against the Fort Wayne Police Department Internal Affairs

In her Complaint, Hughes-Rodriguez also tries to sue Fort Wayne Police Internal Affairs Department asserting that the Department failed to properly investigate the violation of its rules and regulations. (Compl. ¶ 22). A police department is not a suable entity under § 1983. *Best v. Portland*, 554 F.3d 698 (7th Cir. 2008). A police department is a division of a municipal entity and has no legal existence separate from the municipal entity. *See Williams v. Fort Wayne Police Dep't*, No. 1:08-CV-152 RM, 2009 WL 1616749, at *6 (N.D. Ind. June 9, 2009) (citing *Wagner v. Washington Cnty.*, 493 F.3d 833, 835 (7th Cir. 2007)).

## CONCLUSION

Based on the reasoning above, Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED as to all claims.[4] The CLERK is DIRECTED to enter judgment for Defendants.

---

[3] Even if the Court considered the Fourteenth Amendment claim separately from the Fourth Amendment, Hughes-Rodriguez would need to establish a question of fact that Officer Hartman's conduct shocks the conscience. *Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998). There is simply nothing in this record to raise a question of fact on this issue.

[4] Because the Court grants summary judgment on the Fourth and Fourteenth Amendment claims, the Court need not reach the issue of qualified immunity. *See Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 616 (2007) (once the court determines there to be no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity"); *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (same).

SO ORDERED on February 22, 2022.

                                                         s/ *Holly A. Brady*  
                                                         JUDGE HOLLY A. BRADY  
                                                         UNITED STATES DISTRICT COURT